MARK A. SCHULTZ,

      Plaintiff,

      v.                                  Case No. 25-cv-1736-bhl

CO SLATES,
Z PAUL,
JOHN DOES,
JOHN KIND,
NURSE JAMIE,
MR. LEMKE,
LAURISA CORTEZ,
WARDEN PERTU, and
WARDEN STEVENS,

      Defendants.

## SCREENING ORDER

Plaintiff Mark Schultz, who is currently serving a state prison sentence at the Wisconsin Resource Center and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On March 5, 2026, the Court screened the amended complaint and after concluding it failed to state a claim on which relief could be granted, gave Schultz the opportunity to file a second amended complaint, which he did on April 7, 2026. Schultz also filed a motion to appoint counsel and a motion for assistance identifying the Doe Defendants. The Court will screen the second amended complaint as required by 28 U.S.C. §1915A.

### SCREENING OF THE SECOND AMENDED COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a

cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

### ALLEGATIONS OF THE AMENDED COMPLAINT

Schultz asserts that Correctional Officer Slates did not follow policy when he gave the wrong medication to Schultz. While not clear, it appears that Officer Slates inadvertently gave Schultz his cellmate's medication. It also appears that his cellmate was prescribed the same medication but at a much higher dose. Officer Slates and another officer completed an incident report after the mistake was discovered and wrote Schultz a conduct report. Schultz does not describe the contents of the conduct report, but he asserts that it was dismissed a day or two later after he contested it. Schultz states that he was examined by a nurse in the health services unit about a half an hour after taking the medication and was told to let staff know if he had other symptoms. Schultz asserts that he was moved to a different tier after he got back from the health services unit. According to Schultz, Security Director John Kind must have approved the move.

Schultz asserts that he experienced undesirable side effects, including vomiting, chest pains, and "intoxication." He states that he tried to stop John Doe officers while they handed out mail and food trays, but they instructed him to fill out a health services slip. Schultz states that his health services slip was not picked up until about 9:30 p.m., so he had to wait until the next day to be evaluated. Schultz does not state what, if any, treatment he received the next day.

Schultz alleges that a couple of months later, he asked his psychiatrist Laurisa Cortez if he could lower the dose or cancel the prescription for his medication because it was making him "sick and emotionally off balance and intoxicated." He asserts that she refused to make changes "because it would cause withdrawals at in person visits." Schultz asserts that he continued to experience "daily intoxication and negative symptoms" from the medication because of Officer Slates' mistake.

### THE COURT'S ANALYSIS

As the Court explained in the original screening order, Schultz fails to state a claim against Officer Slates based on allegations that Officer Slates inadvertently gave him the wrong medication. Courts have long recognized that an isolated, one-time mistake in dispensing the wrong medication amounts to negligence at most and is therefore not actionable under the

2

Constitution. *See e.g., Van Leer v. Centurion Health of Indiana, LLC*, No. 1:22-CV-02050-TWP-MG, 2023 WL 2814156, at *2 (S.D. Ind. Apr. 6, 2023); *Anderson v. Novak*, 20-cv-901-bbc, 2021 WL 39621, at *1-2 (W.D. Wis. Jan. 5, 2021); *Robbins v. Pollard*, No. 16-CV-1128, 2016 WL 8672956, at *2 (E.D. Wis. Nov. 18, 2016); *Pittman v. Madison County*, 108 F.4th 561,566 (7th Cir. 2024) (explaining that, to prevail, a plaintiff must show that a defendant's actions were purposeful and intentional, not the result of negligence).

Again, the Court acknowledges that, according to Schultz, he has endured uncomfortable consequences because of the error, but the mere fact that he may have suffered harm does not mean the error gives rise to a constitutional claim. *See, e.g., Estelle v. Gamble*, 429 U.S. 97, 105 (1976) ("An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain."). Moreover, an officer's failure to adhere to prison policy does not, on its own, violate the Constitution. *See, e.g., Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003).

Nor does Schultz state a claim against the unidentified officers who were passing out food trays and mail and told Schultz to submit a health services slip if he wanted to be seen. The Constitution does not require prison staff to drop everything simply because a prisoner makes a request because, if it did, prison operations would come to a standstill. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("no prisoner is entitled to insist that one employee do another's job . . . people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsman"). According to Schultz, the officers reminded him of how to obtain further treatment by instructing him to submit a health services slip. Moreover, although Schultz asserts that he was nauseous and his chest felt tight, nothing in the second amended complaint suggests that he was in need of immediate or emergency care. It also appears that the symptoms resolved on their own with the passage of time as Schultz does not allege he received any treatment the following day, meaning Schultz was not harmed by the officers' failure to interrupt their duties to contact the health services unit. *See Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) (holding that to succeed in §1983 suit, a plaintiff must prove that any alleged violation caused injury or damages).

Schultz also does not state a claim against Nurse Jamie, who allegedly assessed Schultz's condition shortly after he took his cellmate's medication and informed Schultz to contact health services if he developed other symptoms. Schultz asserts that she should have continued to monitor him and/or sent him to a hospital for further evaluation. But under the Eighth Amendment,

3

a plaintiff is not entitled to demand specific care, nor is he entitled to the best care possible. He is entitled only to reasonable measures to meet a substantial risk of serious harm. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). Nurse Jamie assessed Schultz and, after concluding he required no treatment at that time, advised him to contact health services if his condition changed. These measures were reasonable and therefore did not run afoul of the Constitution.

Schultz also fails to state a claim against the supervising staff members such as the warden, deputy warden, and security director. It is not clear what Schultz believes they did or did not do to violate his rights as none of them appear to have been involved in either the handing out of the medication or his subsequent treatment. *See Williams v. Shah*, 927 F.3d 476, 482 (7th Cir. 2019) (holding that a defendant is liable for damages under §1983 only if she was personally responsible for the deprivation of a constitutional right). To the extent Schultz names them as Defendants because they are supervisors, he is advised that the doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). For similar reasons, Schultz also fails to state a claim against institution complaint examiner Z. Paul for ruling on his inmate complaint. "Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Finally, Schultz cannot proceed *in this case* on a claim against his psychiatrist based on allegations that she refuses to lower the dosage of his prescribed medication. This disagreement is separate and distinct from Schultz receiving a higher dose of the medication months earlier. As the Seventh Circuit has explained, "[u]nrelated claims against different defendants belong in different suits." *George*, 507 F.3d at 607. The Court will therefore "drop" Cortez as a Defendant. *See* Fed. R. Civ. P. 21. As Schultz decides whether to pursue this claim in a separate lawsuit, he is reminded that a "[d]isagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

As noted, Schultz also filed a motion to appoint counsel and a motion for assistance in identifying the Doe Defendants. The Court decided on March 5, 2026 that Schultz was able to prepare a second amended complaint. The Court continues to believe that Schultz was capable of telling the Court what happened. The mere fact that what happened does not give rise to a constitutional claim does not change the Court's opinion. Because the second amended complaint fails to state a claim, the Court will deny both motions as moot.

4

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that Schultz's motion to appoint counsel (Dkt. No. 22) and his motion for assistance to identify the Doe Defendants (Dkt. No. 23) are **DENIED as moot**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 24th day of April, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge